CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
RJW
NOV 24 2009
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONALD W. GOFF, JR., | ) | Civil Action No. 7:09-cv-00280 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TERRY O'BRIEN, | ) | By: Hon. Jackson L. Kiser |
| Respondent. | ) | Senior United States District Judge |

Donald W. Goff, Jr., a military prisoner proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging his conviction by court martial for premeditated murder. The respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant the motion to dismiss and dismiss the petition for abusing the writ.

I.

A general court martial was convened on June 7 - 10, 1988, to determine petitioner's guilt for the murder of petitioner's nine-week old son. The convening authority adjudged petitioner guilty and sentenced petitioner to forty-years imprisonment, forfeiture of all pay and allowances, and a dishonorable discharge.

Petitioner appealed to the United States Army Court of Criminal Appeals ("ACCA" (formerly the Army Court of Military Review ("ACMR"))), arguing that the military judge erred by failing to instruct the panel members on voluntary manslaughter, a lesser included offense. United States v. Goff, ACMR No. 8801292, slip op. at 1 (A.C.M.R. March 26, 1990) (per curiam) (Resp. to Pet. (docket #12) 113). The ACCA reviewed the evidence, stating:

> [Petitioner] was charged with the premeditated murder of his nine-week-old infant son, Kyle. The evidence established that Kyle died of a depressed comminuted fracture of the back of the head resulting from a "blunt force imjury

> to the back of [Kyle's] head, with underlying brain damage, sustained when
> [Kyle's] head struck a fixed object." Expert witnesses agreed that tremendous
> force was required to inflict such a severe injury, such force as would be found
> in vehicle or aircraft crashes or in one instance where a brick fell four stories
> and struck a construction worker on the head. Thus, such an injury could not
> have been caused by the baby's rolling off the couch or even by the baby's being
> fallen upon by the [petitioner], two scenarios which, among others, [petitioner]
> alleged in pretrial statements.
>
> * * *
>
> [Petitioner] disclosed in pretrial statements, confirmed by his wife at trial, that at
> about 0200 hours on the morning in question baby Kyle started crying.
> [Petitioner] volunteered to get up and take care of him while [his wife] remained
> in bed. [Petitioner] fed and changed the baby but the baby would not stop
> crying. [The wife] got up to see what was going on, but [petitioner] assured her
> that everything was under control. [The wife] then went back to bed and went to
> sleep. In his pretrial statements [petitioner] admitted to being "frustrated"
> because the baby would not stop crying. Obviously, an infant crying in the
> middle of the night, however frustrating to a tired parent, does not constitute
> adequate provocation for killing the child.

Id. at 2 (114). Therefore, the ACCA held that the lesser included instruction was not reasonably raised by the evidence because there was no evidence of adequate provocation for killing his crying son. Petitioner subsequently appealed to the United States Court of Appeals for the Armed Forces ("CAAF" (formerly the United States Court of Military Appeals ("CMA"))), arguing the same issue of the lesser included instruction. The CAAF denied petitioner's petition for review on August 24, 1990. The court martial's convening authority ordered petitioner's dishonorable discharge on February 5, 1991.

On April 16, 1991, petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, to the United States District Court for the District of Kansas while he was incarcerated at the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas. Goff v. Hart, 1993 U.S. Dist. LEXIS 14032, at *2 (D. KS 1993). The district court addressed petitioner's habeas claims that:

2

> (1) the military judge erred by failing to instruct on the lesser included offense of voluntary manslaughter; (2) the military judge erred in not allowing Chaplain Lantz to testify; (3) accident was not ruled out as a cause of death; (4) statements petitioner made to CID were error-filled; (5) the prosecution used hypothetical theories to convict him; and (6) there were insufficient evidence and motive to support the conviction.

Id. at *1-2. The district court held that the military appellate courts "thoroughly addressed" claims (1) and (2) and declined to review the claims again. Id. at *8-9. The district court also held that the remaining claims, described as challenging the sufficiency of the evidence, were reviewed by the military appellate courts and, thus, declined to review them. Id. at *10. The district court, however, alternatively held that any rational trier of fact could have found petitioner guilty of premeditated murder based on the presented evidence. Id. at *10-11. The district court dismissed the § 2241 petition with prejudice on September 29, 1993. Id. at *11.

Petitioner filed a petition for a writ of error coram nobis with the CAAF, which that court denied on July 10, 1997. Goff v. Federal Bureau of Prisons, 48 M.J. 10 (C.A.A.F. 1997). Petitioner alleged that the military judge violated due process by not instructing the panel members to vote on the confinement-for-life portion of the sentence and by not instructing the panel members to vote on the proposed sentences in their entirety. (Petr.'s Br. Supp. Writ Coram Nobis 2 (Resp. to Pet. (docket #12) 149).)

Petitioner filed a petition for a writ of habeas corpus to the United States Army Court of Criminal Appeals, which that court denied on October 12, 2005. (Resp. to Pet. (docket #12) 160.) Petitioner alleged that the military judge erred by failing to instruct the panel members that a life sentence can only be imposed if at least three-fourths of the panel members vote for a life sentence; that failure required vacating his conviction, releasing petitioner, and expunging his

3

criminal record; the military judge should have given a lesser included offense instruction; and counsel provided constitutionally ineffective assistance at trial and on direct appeal. (Petr's Br. Supp. Writ Habeas Corpus 1, 6, 9 (Resp. to Pet. (docket #12) 166, 171, 174).)

Petitioner subsequently filed a petition for grant of review, a certificate for review and a brief with the CAAF on November 16, 2005. Goff v. United States, 62 M.J. 380, 380 (C.A.A.F. 2005). Petitioner alleged the same claims to the CAAF as he presented to the ACCA, but with an additional allegation that ACCA erred by not applying stare decisis in light of Garrett v. Lowe, 39 M.J. 293, 296 (C.M.A. 1994). (Petr.'s Second Br. Supp. Writ Habeas Corpus ii (Resp. to Pet. (docket #12) 189).) The CAAF construed the filings as a petition for a writ of habeas corpus and denied the request on November 30, 2005. Goff v. United States, 62 M.J. 380, 380 (C.A.A.F. 2005).

Petitioner filed a second § 2241 petition for a writ of habeas corpus with the Untied States District Court for the Middle District of Florida in May 2006. Goff v. Warden, FCC Coleman - USP, No. 5:06-cv-00179 (M.D. Fl.). The district court dismissed the petition without prejudice in June 2006 because petitioner did not pay the filing fee or request to proceed in forma pauperis. Petitioner refiled the § 2241 petition in December 2006. Goff v. Warden, FCC Coleman - USP, No. 5:06-cv-00431 (M.D. Fl.). The district court ordered that petitioner file an amended petition because his petition did not use the district court's standard § 2241 form and noted that the amended petition "shall not refer back to the original Petition." Id. (docket #5).

Petitioner filed his amended petition with one claim, alleging that the military judge failed to instruct jury members to vote on mandatory life sentence because Article 52(b)(2) of the

UCMJ requires the jury panel to vote on a mandatory life sentence. Id. (Am. Pet. (docket #6) 3.) Petitioner took no action on his amended petition for nearly two years, and the district court issued petitioner an order to show cause why his petition should not be dismissed for lack of prosecution. Id. (docket #8). Petitioner failed to update his address and did not respond to the district court's order to show cause. Consequently, the district court dismissed the petition without prejudice. Id. (docket #9.)

Military officials transferred petitioner to the custody of the Bureau of Prisons ("BOP") in June 1995. Petitioner was incarcerated within this district at the United States Penitentiary in Lee County, Virginia ("USP Lee"), when he filed the instant § 2241 petition in July 2009. Petitioner presents seven claims:

1. The military trial judge violated Article 52(b)(2), of the Unifrom Code of Military Justice ("UCMJ") and the Rules for Courts-Martial ("R.C.M.") 1006(d)(6) when he failed to instruct the panel members to vote on mandatory life sentence portion to the sentence because a life sentence should have been voted upon and was not due to the military trial judge's failure to instruct the panel members to vote upon the life sentence.

2. Does this Court have jurisdiction to review voting proceedings by military panel members after military tribunals deny habeas on same that are contrary to the Sixth Amendment protections?

3. Is substantial constitutional claim refused by military courts, that is of law rather than disputed fact, resulting in a sentence achieved contrary to the military precedent, reviewable by this Court?

4. Is the prejudice from the military trial judge's noncompliance with R.C.M. 1006(d)(6) and Article 52(b)(2) of the UCMJ harmless error warranting resentencing?

5. Was it error to not instruct panel members on the lesser included offense of premeditated murder where the greater offense mandates a life sentence and members sought a more significantly shorter sentence than life the lesser included offense would serve?

6. Was defense counsel ineffective at trial and on direct appeal for the errors listed above, in violation of the Sixth Amendment?

7. Did military tribunals abuse their discretion when failing to apply stare decisis as to Garrett v. Lowe, 39 M.J. 293 (C.M.A. 1994); R.C.M. 1006(d); and Article 52(b)(2) of the UCMJ?

(Pet. 3; Petr.'s Br. ii.)

II.

A.

I can entertain petitions for writs of habeas corpus, pursuant to 28 U.S.C. § 2241, filed by prisoners incarcerated by order of a military court-martial. Burns v. Wilson, 346 U.S. 137, 139 (1953). A § 2241 petitioner may seek judicial review of the execution of his sentence by filing a petition for a writ of habeas corpus in the district court with jurisdiction over the facility in which he is confined and demonstrating that he is confined in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004). However, the power of a district court to grant a writ of habeas corpus is limited to its territorial jurisdiction. 28 U.S.C. § 2241.

Respondent requests dismissal, arguing that the Warden of USP Lee is not the proper respondent, the proper respondent is the Commandant of the USDB in Fort Leavenworth, Kansas, and I do not have jurisdiction over the Commandant of the USDB. Therefore, I must resolve this question of jurisdiction before addressing the merits of the petition. However, a review of the applicable law reveals that respondent's jurisdictional arguments lack merit.

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." Id. § 2241(a). A § 2241 petition should name as respondent "the person who has custody over [the prisoner]."

Id. § 2242. See Id. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). As the Supreme Court explained in 1885, "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Wales v. Whitney, 114 U.S. 564, 574 (1885). This "immediate custodian rule" is the default, and is "general[ly] applicab[le] . . . to habeas petitions challenging physical custody." Padilla, 542 U.S. at 436.

The Supreme Court of the United States reaffirmed in Padilla the century-old habeas procedure of naming the jailer of a prisoner challenging his present physical confinement. The Court reiterated that it has "never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction." Id. at 439. The Court further stated that "identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.' In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." Id.

Respondent acknowledges that petitioner is "currently, and exclusively, serving a court-martial conviction" but argues that petitioner "is not in custody in Virginia on that sentence, but simply in custody [in Virginia] pursuant to an interagency agreement between the Army and the BOP." (Mot. to Dismiss (docket #13) 13.) Thus, respondent concludes, "the warden is not the person who is holding [p]etitioner in what is alleged to be unlawful custody" because "petitioner is not challenging his present physical confinement at the BOP facility, but is challenging his

7

continued confinement pursuant to his military conviction." (Id. at 13-14.) Respondent further alleges that "[t]here is no immediate custodian . . . [for] [p]etitioner's challenge of custody pursuant to his court-martial conviction because the BOP has no authority of [p]etitioner's release." (Id. at 14.) Respondent concludes that, because petitioner can not challenge his present physical confinement, the "proper respondent is the supervisory Army official who exercises legal control and not the immediate custodian at the BOP facility." (Id. at 10.)

The Supreme Court addressed an analgous argument in Padilla, stating:

> The Court of Appeals' view that we have relaxed the immediate custodian rule in cases involving prisoners detained for "other than federal criminal violations," and that in such cases the proper respondent is the person exercising the "legal reality of control" over the petitioner, suffers from the same logical flaw. Certainly the statute itself makes no such distinction based on the source of the physical detention. Nor does our case law support a deviation from the immediate custodian rule here. Rather, the cases cited by [respondent] stand for the simple proposition that the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement.

542 U.S. at 437-38 (internal citation omitted).

Respondent acknowledges that petitioner is currently serving a court-martial conviction and is in custody at USP Lee, located within this district. Although respondent argues that petitioner is not challenging his present physical confinement, respondent does not alternatively identify what other type of confinement petitioner is challenging.

Respondent cites United States v. Moussaoui, 382 F.3d 453, 464-65 (4th Cir. 2004); Braden v. 30th Judicial Court, 410 U.S. 484 (1973); and Norris v. Georgia, 522 F.2d 1006, 1006 (4th Cir. 1975), in support of his argument. However, respondent's reliance on Moussaoui is of little value because Moussaoui's jailer was unknown because the United States kept the

petitioner in a secret location.  Braden is distinguishable because Braden challenged his future state custody in Kentucky while he was incarcerated in Alabama.  410 U.S. at 488-86.  See, e.g., Rule 2(b) of the Rules Governing § 2254 Cases (stating proper respondent for future state custody challenges includes the Attorney General of that state).  Norris is also distinguishable because a North Carolina inmate filed a habeas petition in the North Carolina federal court where he was incarcerated to challenge detainers issued by Georgia and Louisiana.  The Fourth Circuit Court of Appeals held that the federal district court in North Carolina could exercise jurisdiction over only the respondents it had in personam jurisdiction and could not prevent state executives beyond its jurisdiction from prosecuting Norris.  522 F.2d at 1012.

Respondent's reliance on these cases is misplaced because petitioner is challenging a military conviction for which he is currently incarcerated within this district.  The fact that the Department of Defense placed the petitioner within the physical custody of the Department of Justice in this district creates my jurisdiction to entertain this habeas petition.  The "proper respondent is the person responsible for maintaining – not authorizing – the prisoner's confinement."  Padilla, 542 U.S. at 440 n.13.

Respondent further argues that "[e]ven if this Court finds that the general rule in [Padilla] is applicable, the uniqueness of this situation provides a substantial basis for departing from the 'immediate custodian rule.'"  (Resp.'s Mot. to Dismiss 17.)  The Supreme Court addressed the same argument presented by Justice Stevens in his Padilla dissent:

> The dissent contends that even if we do not indulge its hypothetical scenario, the Court has made "numerous exceptions" to the immediate custodian and district of confinement rules. . . .  Yet the dissent [nor the respondent] cannot cite a single case in which we have deviated from the longstanding rule we reaffirm today – that is, a case in which we allowed a habeas petitioner challenging his

9

> present physical custody within the United States to name as respondent someone other than the immediate custodian and to file somewhere other than the district of confinement. If Justice Stevens' view were accepted, district courts would be consigned to making ad hoc determinations as to whether the circumstances of a given case are "exceptional," "special," or "unusual" enough to require departure from the jurisdictional rules this Court has consistently applied. We do not think Congress intended such a result.

542 U.S. at 449-50.

Petitioner relies on Word v. North Carolina, 406 F.2d 352, 353 (4th Cir. 1969), in support of creating an exception, but that case involved a state prisoner attacking a conviction from the non-custodial state which resulted in detainer filed with his jailer in the custodial state. The federalism and comity issues involved between the three sovereigns in Word are distinguishable from the present case where the only executive involved is the President of the United States whose agents sentenced petitioner, transferred him to this district, and currently confine him in this district. Respondent's reliance on Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986), is, in the Supreme Court's words, "similarly unhelpful" because the United States held Demjanjuk in an undisclosed location, akin to Moussaoui.[1] Padilla, 542 U.S. at 450 n.18. Accordingly, I find that respondent's jurisdiction arguments are meritless and that I have the authority over the instant petition because petitioner is challenging his publicly-known, present physical confinement within this district.

B.

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a

---

[1] The "overseas" exception obviously does not apply because petitioner is not held outside the territorial jurisdiction of any district court. See, e.g., Braden, 410 U.S. at 498 (discussing "overseas" exception).

10

writ of habeas corpus." McCleskey v. Zant, 499 U.S. 467, 470 (1991).[2] The government bears the initial burden of pleading abuse of the writ, and if it meets this burden, the petitioner must show cause and prejudice or a fundamental miscarriage of justice to excuse a failure to raise the claim earlier. McCleskey, 499 U.S. at 494-95. See Murray v. Carrier, 477 U.S. 478, 491 (1986); Miller v. Bordenkircher, 764 F.2d 245, 250 n.5 (4th Cir. 1985) (discussing abuse of the writ doctrine in the context of 28 U.S.C. § 2254). "To excuse an abuse of the writ, a successive habeas petitioner must show either cause and prejudice, or probable actual innocence." LaRette v. Bowersox, 70 F.3d 986, 987 (8th Cir. 1995). In order to satisfy the "cause" requirement, a petitioner must show that some external impediment prevented him from presenting his claim in a timely and procedurally proper manner. See Noble v. Barnett, 24 F.3d 582, 586 (4th Cir. 1994). The cause inquiry focuses on whether the petitioner was prevented from including a particular claim in his most recent petition. See id. (holding that the claims presented in applicant's third habeas petition were barred by the abuse of the writ doctrine because applicant "had full knowledge of the facts central to each of these claims at the time that he filed his second petition for a writ of habeas corpus"). See also Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995) (stating reviewing other "cause and prejudice" prong unnecessary when petitioner fails to establish the other). Respondent raised abuse of the writ for all of petitioner's claims.[3]

---

[2] The abuse of the writ doctrine was not supplanted by the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which prohibits second or successive habeas petitions which raise matters already adjudicated in a previous petition, and requires second successive petitioners raising new claims to be authorized by the appropriate court of appeals. See 28 U.S.C. §§ 2244(b), 2255; Zayas v. INS, 311 F.3d 247, 252-53 (3rd Cir. 2002); Mendez v. United States, No. 04-HC-90-FL, 2004 U.S. Dist. LEXIS 30249, 2004 WL 3327911, *2 n.1 (E.D.N.C. 2004).

[3] Respondent argues abuse of the writ for all of petitioner's claims, but states in a footnote, "Respondent will not address [Claims] 2, 3, 4, and 7 as they are not proper habeas grounds. Furthermore, Respondent will not address [Claim] 6 because Petitioner cannot establish that actual prejudice occurred under his claim in [Claim] 1." (Resp.'s Br. 19 n.16.) Respondent specifically addresses only Claims 1 and 5 despite respondent's lengthy arguments about

11

Petitioner argues in Claim #1 that the military judge erred by failing to instruct the panel members to vote on mandatory life sentence portion to the sentence. Petitioner argues in Claim #3 that three quarters of the panel members should have voted on the life imprisonment term, and petitioner relies on Claims #4 and #7[4] to argue that his conviction should be vacated to remedy the grounds raised in Claim #3. Petitioner argues in Claim #6 that defense counsel was constitutionally ineffective at trial and on direct appeal[5].[6]

I find that petitioner did not present these claims in his first § 2241 petition to the United States District Court for the District of Kansas that he filed in April 1991 although petitioner could have raised these new claims in his previous § 2241 petition. Petitioner argues that cause excusing his untimely presentation of the issue is because BOP officials lost all of his personal property, including legal records, between December 2001 and December 2007 when the BOP transferred him from USP Coleman, Florida; USP Atlanta; and USP Lee. (Petr.'s Resp. Mot. to Dismiss (docket #15) 5.) However, petitioner filed his first § 2241 petition in 1991. Therefore,

---

jurisdiction.

[4]Petitioner relies on Garrett v. Lowe, 39 M.J. 293, 296-97 (C.M.A. 1994) in Claim #7, which held that a mandatory sentence of life imprisonment requires that sentence to be imposed only by a three-fourths vote. The Court of Military Appeals issued this opinion four years following Dodson v. Zelez, 917 F.2d 1250 (10th Cir. 1990). The Dodson court used an analysis similar to Garrett, relied on similar precedent from the Court of Military Appeals like Garrett, and reached the same conclusions like Garrett, albeit several years earlier. Garrett, 39 M.J. at n.4; Dodson, 917 F.2d at 1256-62. Thus, petitioner's claim was already recognized by the Tenth Circuit Court of Appeals, of which the District Court of Kansas is within, on October 23, 1990, before petitioner filed his first federal habeas in April 1991.

[5]Petitioner's direct appeals ended in 1990 at the foreclosure of the time to file a petition for a writ of certiorari with the United States Supreme Court. See Rule 13(1) of the Rules of the Supreme Court of the United States.

[6]Claim #2, in which petitioner argues that federal courts have jurisdiction to review military trials, is not a cognizable habeas claim. Petitioner simply argues in in Claim #2 that I have jurisdiction to review the voting procedures of the panel members at his trial. Even if I did have that jurisdiction, it does not entitle him to relief from his conviction absent some other claim to habeas relief.

petitioner is not excused from failing to raise these claims in his first petition instead of eighteen years later, and the abuse of the writ doctrine bars present consideration of these claims. Accordingly, I dismiss Claims #1, 2, 3, 4, 6, and 7.

Petitioner argues in Claim #5 that the military judge erred by failing to give an instruction on voluntary manslaughter. Petitioner presented this claim in his previous § 2241 petition to the United States District Court for the District of Kansas. The district court considered and rejected the claim because the military appeals court "thoroughly addressed the issue and found there was no evidence to support the giving of the instruction." Goff, 1993 U.S. Dist. LEXIS 14032, at *2. Therefore, I find that a district court already determined the legality of the detention for this issue. See 28 U.S.C. § 2244(a) (stating a district court is not required to review detention after a district court previously determined the legality of the same detention). Accordingly, I dismiss this claim.

### III.

For the foregoing reasons, I grant the respondent's motion to dismiss and dismiss the petition for a writ of habeas corpus.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the petitioner and counsel of record for the respondent.

**ENTER**: This 24th day of November, 2009.

*/s/ Jackson L. Kiser*
Senior United States District Judge